## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

JOSEPH ANALDO,[1]                    :

      Petitioner,              :

vs.                                  :       CA 07-0316-CB-C

ALBERTO GONZALES,  etc.,   :
et al.,
                                     :
      Respondents.

## REPORT AND RECOMMENDATION

      Joseph Analdo, a native and citizen of Haiti ordered removed from the

United States and presently being detained by the United States Department

of Homeland Security, has petitioned this Court for habeas relief pursuant to

28 U.S.C. § 2241.[2] This matter has been referred to the undersigned for entry

of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and

Local Rule 72.1(c). It is recommended that the instant petition be dismissed,

---

[1]       The docket sheet reflects petitioner's last name as being "**Am**aldo." However, this is a mistake; petitioner's last name is "**An**aldo."

[2]       Petitioner is in the actual and present physical custody of David O. Streiff, Warden of the Perry County Correctional Center in Uniontown, Alabama. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447, 124 S.Ct. 2711, 2724, 159 L.Ed.2d 513 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement.").

without prejudice to being filed at a later date, because Analdo has prematurely

filed the present attack upon his post-removal-period detention.

## **FINDINGS OF FACT**

1.      Analdo is a native and citizen of Haiti who entered the United

States on January 23, 1986 as a lawful permanent resident. (Doc. 7, Exhibit A)

2.      The Department of Homeland Security placed Analdo into

removal proceedings by the issuance of a Notice to Appear dated May 11,

2006. (*Id*.) Petitioner was notified that his history of forgery and falsifying

business records convictions made him deportable. (*See id*.) Analdo has been

detained by ICE since May 11, 2006. (*See* Doc. 7, Exhibit B)

3.      On August 3, 2006, Immigration Judge Alan Vomacka ordered

Analdo removed from the United States and returned to his native Haiti. (Doc.

7, Exhibit C)  Analdo's application for cancellation of removal under §

240A(a) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(a), was

denied as were all other relief applications. (*See id*.)

4.      Analdo timely appealed the Immigration Judge's August 3, 2006

decision to the Board of Immigration Appeals. (*See* Doc. 7, Exhibit D) On

October 27, 2006, the Board of Immigration Appeals issued its decision

affirming the Immigration Judge's determination and dismissing the appeal.

2

(*Id.*)

The record reflects that the respondent, a native and citizen of Haiti, was admitted to the United States as a lawful permanent resident on or about January 23, 1986 (Exh. 1). Subsequently, on March 12, 2002, the respondent was convicted in the Supreme Court of New York, County of Kings, for the offense of forgery in the third degree in violation of New York Penal Law section 170.05 (Exh. 2). On April 24, 2002, the respondent was convicted in the Supreme Court of New York, County of New York, for the offense of falsifying business records in the second degree in violation of New York Penal Law section 175.05 (Exh. 2). On May 6, 2002, the respondent was convicted in the Supreme Court of New York, County of Kings, for the offense of falsifying business records in the first degree in violation of New York Penal Law section 175.10 (Exh. 2). Based upon these convictions, the respondent was placed into removal proceedings with the issuance of a Notice to Appear on May 11, 2006 (Exh. 1).

During the proceedings, the respondent conceded removability as charged. Among other applications for relief not relevant to this decision, the respondent filed an application for deferral of removal under the Convention Against Torture. The Immigration Judge denied the respondent's application based upon his conclusion that the respondent had failed to demonstrate that it is "more likely than not" that an individual in his circumstances, i.e., a former guard for Duvalier, a.k.a. "Baby Doc," who participated in the mistreatment of other Haitian citizens, would be subjected to treatment rising to the level of torture as that term is contemplated under the Convention Against Torture (I.J. at 15-17). In particular, the Immigration Judge found that the evidence of record regarding current country conditions in Haiti did not support the respondent's claim that he qualifies for protection under the Convention Against Torture (I.J. at 15-17). In this regard, the Immigration Judge noted that the evidence of background conditions in Haiti indicates a current situation of chaos due to

the unsure conditions regarding who maintains governmental control in Haiti (I.J. at 17).

On appeal, the respondent contends that the Immigration Judge erred in denying his application for deferral of removal. *See* Respondent's Brief at 3. According to the respondent, the Immigration Judge does not have the ability to disbelieve his testimony for purposes of denying him relief while, at the same time, crediting his testimony as true for purposes of finding him statutorily ineligible for other forms of relief. *Id*. It appears that the respondent refers to the portion of the Immigration Judge's decision wherein he expresses doubt regarding the respondent's testimony about an alleged 1988 attack in Haiti versus the portion of the Immigration Judge's decision wherein he accepts the respondent's testimony regarding the persecution he inflicted upon others while in the employ of "Baby Doc" (I.J. at 12-13; 15-17).

A review of the Immigration Judge's decision does indicate the aforementioned "disparities" in his credibility determination in this case (I.J. at 12-13; 15-17). In fact, the Immigration Judge himself notes this in his decision (I.J. at 17). However, contrary to the respondent's assertions on appeal, these findings do not affect the outcome of the Immigration Judge's denial of his application for deferral of removal which is predicated upon the respondent's failure to successfully show that an individual in his circumstances will "more likely than not" be subjected to torture if returned to Haiti (I.J. at 16-17). In this regard, we note that the Immigration Judge accepted the basis of the respondent's claim which is that he will be subjected to torture in Haiti because he was [a] guard for Duvalier almost 20 years ago (I.J. at 15-17). We agree with the Immigration Judge that the country reports simply do not support this claim (I.J. at 16-17). According to the country reports contained in the record, the Haitian government no longer resorts to military intimidation to control its populace but, rather, seeks to mobilize popular enthusiasm through self-help organizations. Incidents

4

against people associated with the Haitian military or de facto regimes are "isolated" and carried out through "private justice" without any aid or collusion from the Haitian government.

Additionally, there is no longer retaliation against former members of the Haitian police forces and army. According to the reports, "rank-and-file" former members, such as the respondent, may face a poor economic future, but do not face a likelihood of an attack. Further, since the overthrow of Duvalier in 1986, there have been several governments of widely different political tendencies. None of these governments have shown hostility to Duvalier supporters and there is little likelihood of harm. For example, even the father-in-law of Duvalier returned to Haiti without incident. The only punishment that may be sought against any former Duvalier supporter or employee is prosecution against some of the principals, which the respondent was not. Under these circumstances, even if the respondent's testimony regarding an attack in 1988 is credited as true for purposes of his application, he has nevertheless failed to objectively sustain his burden of proof for protection under the Convention Against Torture.

(*Id.*)

5.     Analdo filed a motion to reopen his removal proceedings on March 5, 2007. (*See* Doc. 7, Exhibit E) This motion was denied as untimely filed by per curiam order dated April 4, 2007. (*Id.* ("Pursuant to 8 C.F.R. § 1003.2(c)(2) (with certain exceptions not pertinent here), a motion to reopen in any case previously the subject of a final decision by the Board must be filed no later than 90 days after the date of that decision. In the instant case, a motion to reopen would have been due on or before January 29, 2007. The

record reflects, however, that the Board did not receive the motion until March 05, 2007. The motion to reopen was therefore filed out of time. Accordingly, the motion to reopen is denied. The request for a stay is also denied."))

6.      Analdo filed a petition for review and motion for stay of removal in the Second Circuit Court of Appeals on April 12, 2007. (Doc. 7, Exhibit F) The docket sheet entry for May 25, 2007, reflects that Analdo's case will be ready for a ruling during the week of September 10, 2007. (*See* Doc. 7, Exhibit G, Docket Sheet)

7.      Pursuant to internal procedures established and followed by the Second Circuit Court of Appeals since September of 1995, aliens will not be deported while a stay motion is pending. (Doc. 7, Exhibit G ("Effective immediately . . . the U.S. Attorney will instruct INS not to deport or return aliens in any case where the Clerk's office has informed the U.S. Attorney that a stay motion has been filed, until and unless the motion for stay is denied . . . . The U. S. Attorney will not instruct INS to refrain from steps preliminary to deportation. The U.S. Attorney for the Southern District of New York represents INS in all appeals from BIA rulings on deportation orders issued throughout the Circuit. Accordingly, the new policy provides comprehensive

protection from deportation while these motions for stay are pending.")[3])

8.     Analdo filed his petition seeking habeas corpus relief, pursuant to 28 U.S.C. § 2241, in this Court on May 9, 2007. (Doc. 1)

## CONCLUSIONS OF LAW

1.     In *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S.Ct. 2491, 2498, 150 L.Ed.2d 653 (2001), the Supreme Court determined that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."

2.     In *Zadvydas*, the Supreme Court held that the post-removal-period detention statute, 8 U.S.C. § 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689, 121 S.Ct. at 2498.

3.     8 U.S.C. § 1231 reads, in relevant part, as follows:

---

[3]     This internal memorandum for chambers and staff was penned by George Lange, III, the Clerk of Court for the Second Circuit Court of Appeals. *Compare id. with Engel v. CBS, Inc.,* 145 F.3d 499, 505 (2nd Cir. 1998) ("The foregoing question is hereby certified to the Court of Appeals of the State of New York as ordered by the United States Court of Appeals for the Second Circuit. By The Court: /s/ George Lange III[,] Clerk[.]") *and M. J. C. M. Kools v. Citibank, N.A.,* 73 F.3d 5, 8 (2nd Cir. 1995) ("The foregoing is hereby certified to the Court of Appeals of the State of New York as ordered by the United States Court of Appeals for the Second Circuit. For the Court George Lange III, Clerk[.]").

**(a)**   **Detention, release, and removal of aliens ordered removed**

**(1)**   **Removal period**

**(A)**   **In general**

Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

**(B)**   **Beginning of period**

The removal period begins on the **latest** of the following:

**(i)**   The date the order of removal becomes administratively final.

**(ii)**   If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

**(iii)**   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

**(C)**   **Suspension of period**

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or

other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

**(2)   Detention**

During the removal period, the Attorney General shall detain the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

*Id*. (emphasis supplied). The Supreme Court in *Zadvydas* concluded that six months represents a presumptively reasonable period of time to detain a removable alien awaiting deportation pursuant to the provisions of this statute. 533 U.S. at 701, 121 S.Ct. at 2505 ("While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And

9

for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."); *see Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter.").

4. In *Akinwale*, the Eleventh Circuit determined that the six-month detention period recognized by the Supreme Court "must have expired" at the time a petitioner's § 2241 petition is filed "in order to state a claim under *Zadvydas*." 287 F.3d at 1052; *see also id.* ("[I]n order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."). The *Akinwale* court also indicated that the running of the six-month detention period can be interrupted or tolled by the alien moving for a stay of deportation/removal and any subsequent action of the appropriate circuit court

10

in granting such motion. *See id.*, n.4 ("Akinwale was taken into custody on November 17, 1999, and interrupted the running of time under *Zadvydas* by moving on December 3, 1999, for a stay of deportation in his prior appeal to this Court. The stay was granted on January 10, 2000.  . . . Akinwale subsequently filed the § 2241 petition in this case on March 21, 2000. Thus, Akinwale, unlike the aliens in *Zadvydas*, chose to simultaneously challenge issues related to his removal order and his post-removal period detention. . . . Therefore, Akinwale did not have even an unencumbered month of detention prior to filing his § 2241 petition, let alone the requisite six months.").

5.      In this case, Analdo has filed his § 2241 petition prematurely. Though petitioner's filing date in the instant action, May 9, 2007 (Doc. 1), came more than six months after the date upon which his removal became administratively final on October 27, 2006, he interrupted the running of the time under *Zadvydas* by moving, on April 12, 2007, for a stay of deportation. Therefore, in accordance with *Zadvydas* and *Akinwale*, Analdo has had, at most, a five and one-half month period of detention prior to the filing of his § 2241 petition that can be counted toward the six-month post-removal-period detention recognized as presumptively reasonable by the Supreme Court. In other words, the six-month period has not yet expired; thus, petitioner has not

stated a claim for relief under 28 U.S.C. § 2241 and *Zadvydas*.

## **CONCLUSION**

For these reasons, the undersigned recommends that this Court dismiss, without prejudice, Joseph Analdo's habeas corpus petition filed pursuant to 28 U.S.C. § 2241. Analdo's petition has been prematurely filed under 8 U.S.C. § 1231. The dismissal is without prejudice to petitioner's ability to file a new § 2241 petition in the future when he is able to state a claim under *Zadvydas*.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 21st day of August, 2007.

   s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.    *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

    s/WILLIAM E. CASSADY
    UNITED STATES MAGISTRATE JUDGE

13